UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ADRIEN IRVING, | : | |
|       Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| THERESA LANTZ, ET AL., | : | Civil No. 3:08CV200(PCD) |
| | : | |
|       Defendants. | : | |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Ricardo Ruiz, M.D., moves pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment. For the reasons stated herein, Defendant's motion for summary judgment [Doc. No. 17] is **granted**.

**I.     BACKGROUND**

Plaintiff Adrien Irving filed this complaint on January 2, 2008, while incarcerated at the Webster Correctional Institution ("Webster C.I.") in Cheshire, Connecticut. Plaintiff named Commissioner of Correction Theresa Lantz, Deputy Commissioner Brian Murphy, Warden Charles Lee, Deputy Warden Jeff Adgers, Captain Robin Perry, Counselor April Carozza and Dr. Ricardo Ruiz as Defendants. In its initial review order dated July 7, 2008, the Court dismissed all claims except deliberate indifference to medical needs as to Defendant Ruiz.

Plaintiff was incarcerated at the Cheshire C.I. and the Webster Correctional Institution ("Webster C.I.") during the period December 2, 2004 to March 3, 2005. He was again incarcerated at Webster C.I. during the period May 15, 2007 to January 14, 2008. (Def.'s Local R.

56(a)(1) Stmt. ¶ 5[1].) Defendant Dr. Ricardo Ruiz is a physician licensed to practice medicine in the State of Connecticut and has been employed by the Correctional Managed Health Care Program since January 11, 2002. (Id. ¶¶ 1,2.)

Defendant treated Plaintiff periodically during his stays at Cheshire C.I. and Webster C.I. and was familiar with his medical history. (Id. ¶ 5.) On September 4, 2007, Defendant examined Plaintiff after he complained of chest pain. Plaintiff had reported to nursing staff that the pain started the previous day while he was doing push-ups. Defendant examined Plaintiff and found clear lungs but pain and tenderness over the right fifth costochondral joint. In Defendant's opinion, Plaintiff was experiencing costochondritis pain, likely the result of his exercise regimen. Defendant advised Plaintiff to stop his exercise and prescribed Motrin for the pain. (Id. ¶ 13.) Costochondritis is a condition that causes chest pain due to inflamation of the cartilage and bones in the chest wall. It is often caused by repetitive exercise. The condition causes pain over the front of the upper chest, which can worsen when taking a deep breath. A patient should be instructed to avoid or limit the activity that caused the symptoms and a non-steroidal anti-inflammatory medication can decrease the inflamation and make the patient more comfortable. (Id. ¶ 12.)

Plaintiff was given Motrin on September 17, 2007 by the nursing staff because it had not yet been received from the pharmacy. (Id. ¶ 14.) Plaintiff submits that this delay in receiving medication caused him to suffer unnecessary and extreme pain. (Pl.'s Local R. 56(a)(2) Stmt. ¶ 1.) He argues that Defendant's failure to follow up and ensure that he received Motrin was the

---

[1] Facts cited to Defendant's Local Rule 56 Statement were admitted by Plaintiff unless otherwise noted.

result of deliberate indifference. Defendant next saw Plaintiff on September 27, 2007, for an unrelated condition. There was no mention of continuing chest pain and the Motrin order was continued for sixty days. (Id. ¶ 15.) On October 4, 2007, Defendant discontinued Plaintiff's use of Motrin because his complaints of chest pain had ceased and Defendant was concerned that Motrin could elevate Plaintiff's's liver enzymes due to his particular health history. (Id. ¶ 16.)

On October 19, 2007, Plaintiff complained of continuing chest pain to a nurse and requested more Motrin. When this information was relayed to Defendant, he entered another order for Motrin on October 23. (Id. ¶ 17.) On October 30, the Motrin prescription was again discontinued due to worry that it would cause an elevation in Plaintiff's liver enzymes. Plaintiff was given Tylenol instead. (Id. ¶ 18.) On December 13, 2007, Plaintiff returned to the medical unit complaining of chest pain. Defendant saw Plaintiff on December 18, 2007, his next visit to Webster C.I., and again noted costochondritis. He advised Plaintiff to avoid exercise and sports and prescribed Motrin for another thirty day period. He continued to monitor Plaintiff's liver function in light of the continuing Motrin prescription. (Id. ¶¶ 19-21.) Plaintiff was released to supervised parole on January 14, 2009. (Id. ¶ 22.)

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990). The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 225. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal

standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

III. DISCUSSION

Plaintiff argues that the delay in his receipt of the prescribed Motrin rises to the level of an Eighth Amendment violation in the form of denial of medical care. In order to establish an Eighth Amendment claim on this basis, a plaintiff must prove deliberate indifference to serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

"The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, sufficiently serious. Second, the charged official must act with a sufficiently culpable state of mind." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). An official acts with the requisite state of mind if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Hathaway, 37 F.3d at 66; Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

The Court need not address the seriousness of Plaintiff's medical needs because nothing in the evidence, or even in Plaintiff's allegations, constitutes indifference on the part of Defendant. "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." Chance, 143 F.3d at 703. Here,

Defendant saw Plaintiff four times for a non life threatening condition. From all accounts Defendant afforded Plaintiff the correct treatment at each visit. Plaintiff's only complaint is the delay in receiving his Motrin, an over the counter medication. Plaintiff admits that the delay was caused by the pharmacy, not Defendant. His only argument supporting indifference is that Defendant did not follow-up to ensure that Plaintiff received his medication. Defendant's actions could not even constitute negligence; they certainly do not rise to the level of an Eighth Amendment claim. Plaintiff never informed Defendant of the delay in receiving his medication and Defendant has no independent duty to ensure that the pharmacy distributes medicine quickly. Defendant fulfilled all his duties will apparent care and caution. He reviewed Plaintiff's medical history, examined him four times, correctly diagnosed Plaintiff's condition and afforded him adequate treatment.

Even when viewing the evidence in the light most favorable to Plaintiff, there is nothing in the record from which a reasonable jury could conclude that Defendant was deliberately indifferent to Plaintiff's medical needs. Defendant took all risks to Plaintiff's health seriously, he did not disregard any dangers. There is no question of fact for a jury to decide and summary judgment is therefore granted.

## IV.     CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment [Doc. No. 17] is **granted**. The clerk shall close the case.


SO ORDERED.

6

Dated at New Haven, Connecticut, July  12 , 2010.

                                                /s/
                                 Peter C. Dorsey, U.S.D.J.